Glenn **ELLISON**, Appellant,

v.

Raymond **KNAPEK**, Appellee.

No. 4643.

Court of Civil Appeals of Texas.

Waco.

Oct. 26, 1967.

Rehearing Denied Nov. 16, 1967.

Kacir & Kazanas, George E. Kacir, West, for appellant.

Beard & Kultgen, Pat Beard, Waco, Tom Beard, Hillsboro, for appellee.

## OPINION

WILSON, Justice.

This action involves a farm lease contract.

The trial pleading of appellee-plaintiff Knapek alleged that he and appellant-defendant Ellison signed a handwritten contract by which Ellison leased his 234-acre farm to Knapek for 1966 and 1967: "except land that will be put 40% diverted land program (feed grain) of which I (Ellison) will be owner and operator. I will receive all total government payment on diverted land program (feed grain)". Subsequently, it was alleged, Ellison submitted to Knapek for signature a typewritten contract form which he represented was the same as the handwritten agreement except that it was in typewriting.

The typewritten agreement changed the exception to read: "except the land which

will be put into the diverted land program of which I will be owner and operator." The parties signed it.

Knapek alleged the typewritten document was without consideration; or that, on the ground of mutual mistake, it should be reformed to conform to the handwritten agreement; or that it should be so reformed because of a known false representation as to its contents, made to induce its execution. It was pleaded that Ellison excluded Knapek from possession after the latter had plowed 60 acres. Ellison pleaded, in effect, that he was authorized to put all the "cultivated land in the farm into the U.S.D.A. Diverted Land Program" under the typed agreement, and thereby Knapek had no right of occupancy. Knapek's position is that the 40% diversion limitation in the handwritten agreement was the true contract. Damages consisting of the fair rental value of the land and loss of profits were sought by Knapek. Ellison filed a cross-action for damages alleged to have resulted from Knapek's complaint to the local U. S. Department of Agriculture Committee. A take-nothing judgment was rendered on his claim.

The jury verdict included findings: (1) that Ellison represented the typewritten agreement contained the same terms as the handwritten contract; (2) that the representation was false, but (3) Ellison did not know it was false; (4) that it was made to induce Knapek to sign the typewritten agreement; (5) that he relied on it; (6) that Knapek was denied possession of the cultivated land for 1966 and 1967; and (7) of pasture land for 1966; (8) that "no consideration was furnished" for signing the typewritten document; that (9) Knapek would have made a profit of $20 per acre for 2 years; and (10) the reasonable cash rent value per acre was $5.50.

Additional findings were that Ellison "did not perform his part" of the typewritten lease; that he "relied on" it, and "entered into" it because of the reliance; that by his conduct Knapek led Ellison to believe "the typewritten contract would not

be questioned"; that Ellison sustained no damages as a result of a complaint by Knapek (with "probable cause") to the U. S. Department of Agriculture.

Ellison's motion that "the findings of the jury be disregarded and that he have judgment" was overruled. Knapek's motion that the third finding as to Ellison's knowledge be disregarded as being without support in the evidence, and that judgment be rendered for him on the remaining findings, was sustained. He recovered judgment for $4992.50. We affirm.

Ellison's first group of points asserts Knapek "waived the right to rely" on the handwritten lease, that he is estopped to rely on it, and the evidence "conclusively establishes plaintiff's ratification of the typewritten contract." His contentions concerning waiver, ratification and estoppel are based on the following: (1) Knapek and his wife read the typed lease before he signed it, retaining a copy. (2) Knapek complained to the County Committee (A.S.C.) of the U. S. Department of Agriculture, "claiming to be a tenant under the typed lease," and appealed to the State Committee, which "ruled he was not a tenant of Ellison." His claim resulted in withholding of payments to Ellison on other land for five months. (3) Knapek originally sued on the typed agreement and answered a request for admission that "he relied on" it. (4) After his summary judgment motion was overruled he amended his pleading to declare on the holographic instrument.

The argument concerning the reading and retaining of the typed form is answered by the jury findings as to Ellison's representations that it contained the same terms as those in the agreement written by hand. Neither waiver, ratification or estoppel are established as a matter of law in the face of the verdict. There is adequate evidence to support the material findings. Where a representation is relied on in contract cases, "no definite rule can be laid down as to what degree of ignor-

ance or condition of mind" is necessary, and special circumstances surrounding the transaction are important. Safety Casualty Co. v. McGee, 133 Tex. 233, 127 S.W.2d 176, 121 A.L.R. 1263. Knapek had an eighth-grade education; Ellison, a school superintendent, had two college degrees. There was testimony that Ellison said to Knapek concerning the handwritten paper: "I don't have a typewriter. Let's just sign this. You come back in a few days and we'll type two copies"; and that he said of the typed paper, "It's the same thing."

Once it is established that a misrepresentation has induced the signing of a contract by plaintiff, "it is no answer to his claim to be relieved of it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: 'You at least, who have stated what is untrue, * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.'" Safety Casualty Co. v. McGee, above, 127 S.W.2d p. 180. See Indemnity Ins. Co. of North America v. W. L. Macatee and Sons, 129 Tex. 166, 101 S.W.2d 553; Granger v. Kishi, Tex.Civ.App., 153 S.W. 1161; Wilder v. Malone, Tex.Civ. App., 212 S.W.2d 938.

The contention that Knapek claimed "under the typed lease" to the county and state committees is met by the testimony of Knapek that he presented to them "both of the contracts; both of them leases."

Amendment by Knapek of his pleading (after filing the original petition which declared on the typed document, and after motion for summary judgment under that pleading was overruled) does not entitle Ellison to judgment as a matter of law. Apparently it is urged that the original pleading and the motion constitute an admission. Abandoned pleadings, those superseded by amendment, are not admissions unless introduced in evidence; and then they are not conclusive. Houston, E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70

S.W. 531, 537; 45 Tex.Jur.2d, Pleading, Sec. 88, p. 530.

The argument as to Knapek's answer to a request to admit, under Rule 169, Texas Rules of Civil Procedure, that he relied on the typed agreement is likewise without efficacy: His answer was, "True, but not solely." This qualified response (even if not considered a reply to a request for a legal conclusion) did not entitle Ellison to judgment.

It is argued that it was erroneous for the court to disregard the jury's answer that Ellison did not know his representation was false. The evidence to support the converse of the finding is undisputed. Ellison testified the second was not "supposed to be the same agreement" as the first. His testimony was simply to the effect he did not make the representation found by the jury.

Even if the evidence was not thus conclusive, the issue was immaterial. In a case of this nature "it is not an essential element of fraud that the party charged therewith must know of the falsity of the representation in question." Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464, 466; Poindexter v. Davis, Tex.Com.App., 27 S.W.2d 139, 141, 25 Tex.Jur.2d, Sec. 17, p. 632; id., Sec. 18, p. 636.

If appellant seeks to avoid jury findings on his alleged damages, as we interpret his argument, the complaint by Knapek to the local and state committees is too remote to constitute a cause of damage alleged, as we held in Brown v. Gray, Tex. Civ.App., 383 S.W.2d 950, 953, writ ref. n.r.e.

Ellison urges that the decision of the State Committee that he was "not a tenant" is final and conclusive. One seeking to show a right under the decision of a special tribunal must show the tribunal had jurisdiction to render it. Todd Shipyards Corp. v. Texas Employment Commission, 153 Tex. 159, 264 S.W.2d 709. Ap-

**478**

pellant points to no law empowering the committee to make that decree. In our opinion, it had no such power.

■ As a general rule principles of res judicata are not applicable to decisions of federal administrative agencies of the present nature where there is no statute making the decision final and conclusive. District 50, United Mine Workers of America v. N. L. R. B., 4 Cir., 234 F.2d 565. See 2 Am.Jur.2d Administrative Law, Secs. 494–506.

In the present case the State A. S. C. Executive Director reported that Knapek's complaint "involves some legal questions that the Committee feels in no position to determine." In our opinion there is nothing in the record to indicate the Committee undertook or purported to decide the questions involved in this action. It merely undertook to decide for conservation payment purposes, whether Knapek was a tenant for 1966.

Other points are overruled.

Affirmed.